**William A. CLARK, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 00–644 C.**

United States Court of Federal Claims.

Nov. 29, 2001.

Helen K. Michael, Washington, DC, for plaintiff, with whom were Robert Shulman and Victor J. Miller. Richard T. Dorman, Mobile, AL, of counsel.

John S. Groat, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant, with whom were James M. Kinsella, Deputy Director; David M. Cohen, Director; and Stuart E. Schiffer, Acting Assistant Attorney General. Captain Andrew M. Leblanc, Department of the Air Force, and Major Joe Fetterman, Department of the Army, of counsel.

## OPINION

DAMICH, Judge.

### I. Introduction

This action is before the Court on Defendant's Motion to Dismiss for lack of jurisdiction pursuant to Rule 12(b)(1) of the Court of Federal Claims (RCFC) or, in the alternative, for failure to state a claim upon which relief can be granted pursuant to RCFC 12(b)(4). Defendant contends that 37 U.S.C. § 206(d) bars Plaintiff from receiving compensation for correspondence courses because Plaintiff is a member of a reserve component. Defendant also argues that 37 U.S.C. § 206(a) does not mandate such compensation. Defendant additionally states that the definition of "inactive-duty training" in 37 U.S.C. § 101(22) prohibits compensation for any member of a reserve component for work or study in connection with a correspondence course. For the reasons stated herein, the Defendant's Motion to Dismiss is GRANTED. Consequently, Plaintiff's Motion for Class Certification is DENIED. Defendant's Motion for Leave to File Supplemental Authority is DENIED.

### II. Factual Background

William A. Carter (hereinafter Plaintiff) is a sergeant in the Alabama National Guard. Compl. ¶ 1. The National Guard is comprised of the Army National Guard and the Air Force National Guard. Plaintiff has been a member of the National Guard since approximately April 1987. Compl. ¶ 7. The Secretary of Defense, the Secretary of the Army, and the Secretary of the Air Force require members of the National Guard to undergo specified courses of training or instruction. Compl. ¶ 2. According to Plaintiff, many of these specified courses are available to members of the National Guard only as correspondence courses. Compl. ¶ 3. The National Guard does not compensate Guard members for completing them. Compl. ¶ 5. Plaintiff asserts that the Army National Guard engages in the same practice of requiring correspondence courses and not compensating members who take them. Compl. ¶ 16. According to Plaintiff, "[t]he same course material has been taught in resident courses, which were formerly avail-

able to National Guard members." Compl. ¶ 15. National Guard members were paid for active duty when they took the resident courses. Compl. ¶ 15.

Plaintiff contends that the National Guard requires members to complete correspondence courses in order to advance or remain in the National Guard, but does not compensate members for time spent taking the courses. Compl. ¶¶ 1, 16, 35. According to Plaintiff, the Secretaries of the Army and Air Force have "prescribed training, including correspondence courses, as a requirement for maintaining membership in and advancing in the National Guard." Compl. ¶ 36. Plaintiff alleges that on October 7, 1999, he was reduced in grade from SSG / E6 to SGT / E5 for "[f]ailure to successfully complete NCO Course (BNCOC PH II) which was a condition of promotion." Compl. ¶ 11 (citing Alabama Army National Guard ORDERS 280–009). He also alleges that the required course was only available to him as a correspondence course, and because he knew that he would not receive compensation, Plaintiff did not take the course. Compl. ¶ 13. Plaintiff also states that he was not made aware before the October 7, 1999 reduction in grade, that he was required to take the BNCOC Phase II course in order to remain in the grade of SSG. Compl. ¶ 12.

Plaintiff brought suit in this Court on November 1, 2000. He maintains that failure to provide compensation for correspondence course work violates 37 U.S.C. § 206(a)(2). Compl. ¶ 17. Plaintiff seeks compensation for past correspondence course work, injunctive relief prohibiting the National Guard from failing to pay for future correspondence course work, and attorney's fees, costs and expenses.[1] Compl. ¶ 43. Defendant filed its Motion to Dismiss on February 6, 2001, and oral arguments were held on July 19, 2001.

## III. Discussion

### A. Subject Matter Jurisdiction

The Tucker Act, 28 U.S.C. § 1491, grants the Court of Federal Claims jurisdiction to "render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a). It is well established that the Tucker Act is a jurisdictional statute and does not create any substantive right enforceable against the United States for any money damages. *United States v. Testan*, 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). Plaintiff's right of recovery must be based upon the Constitution, a federal statute, or a regulation which grants plaintiff, expressly or by implication, a right to be paid a sum certain. *Dehne v. United States*, 970 F.2d 890, 892 (Fed.Cir. 1992). Further, "a claimant who says he is entitled to money from the United States because a statute or regulation grants him that right, in terms or by implication, can properly come to the Court of Claims, at least if his claim is not frivolous, but arguable." *Ralston Steel Corp. v. United States*, 169 Ct.Cl. 119, 125, 340 F.2d 663 (1965), *cert. denied*, 381 U.S. 950, 85 S.Ct. 1803, 14 L.Ed.2d 723 (1965).

The Federal Circuit has already stated that to invoke jurisdiction under 37 U.S.C. § 206, a plaintiff must allege that he is a member of the National Guard or the reserves. *Dehne*, 970 F.2d at 892 ("The applicable jurisdictional prerequisite for section 206 is that the claimant be a member of the National Guard or of the reserves."). Plaintiff has established jurisdiction here because Plaintiff alleges that he has been a sergeant in the Alabama National Guard since on or about April 1987. Compl. ¶ 7. The more difficult question is whether Plaintiff can show that § 206 mandates payment for the correspondence courses that he has taken. This question is not one of jurisdiction, but one that involves a Rule 12(b)(4) analysis. *Dehne*, 970 F.2d at 892.

---

1. Plaintiff also requested that the Court certify his action as a class action, certify Plaintiff as class representative, and approve Plaintiff's attorneys as attorneys for the entire class. On January 23, 2001, the Court stayed Defendant's response to Plaintiff's motion for class certification pending resolution of Defendant's Motion to Dismiss.

## B. Failure to State a Claim

### 1. Standard

"A motion to dismiss under Rule 12(b)(4) for failure to state a claim upon which relief can be granted is appropriate when the facts asserted by the claimant do not under the law entitle him to a remedy." *Perez v. United States,* 156 F.3d 1366, 1370 (Fed.Cir.1998). "In reviewing the dismissal under Rule 12(b)(4), we are mindful that we must assume all well-pled factual allegations as true and make all reasonable inferences in favor of ... the nonmovant." *Id.* "Dismissal under Rule 12(b)(4) is appropriate only when it is beyond doubt that the plaintiff can prove no set of facts in support of his claim [that] would entitle him to relief." (Citations omitted; internal quotation marks omitted.) *Ponder v. United States,* 117 F.3d 549, 552 (Fed.Cir.1997), *cert. denied,* 522 U.S. 1110, 118 S.Ct. 1040, 140 L.Ed.2d 106 (1998).

The court looks to the complaint to make sure that Plaintiff has made factual allegations with respect to all the required elements. *Sommers Oil Co. v. United States,* 241 F.3d 1375, 1378 (Fed.Cir.2001) (looking to the complaint after stating that defendant's "contract claim turn[ed] on the adequacy of its pleading."); *Morris v. United States,* 33 Fed.Cl. 733, 743 (1995) ("In considering such a motion, the scope of our inquiry is confined to the facts alleged in the complaint, which we presume to be true and correct."). "Because granting [a motion to dismiss] terminates the case on the merits, courts broadly construe the complaint, particularly in light of the liberal pleading requirements under the Federal Rules of Civil Procedure." *Ponder,* 117 F.3d at 552–53.

### 2. 37 U.S.C. § 206(d) as a Bar to Compensation

According to 37 U.S.C. § 206(d),[2] members of reserve components may not receive compensation for correspondence courses of an armed force. Thus, the primary issue before the Court is whether Plaintiff is a member of a reserve component. This is a close question. Defendant's main assertion is that because members of the National Guard, such as Plaintiff, are also dually enlisted as members of the National Guard of the United States, and because the Army National Guard of the United States qualifies as a "reserve component," Plaintiff is a member of the Army National Guard of the United States and thus a member of a reserve component, not warranting compensation for correspondence courses. Plaintiff's contrary contention is that while he is a member of the National Guard, he is not a member of the National Guard of the United States until called to active duty. Thus, he is not a member of a reserve component and is eligible for compensation for correspondence courses. Based on the Court's interpretation of the statutory law and the *Perpich* decision in which the Supreme Court attempted to explain the National Guard dual enlistment system created by Congress, the Court agrees with Defendant and finds that Plaintiff is barred from receiving compensation under § 206(d) for completed correspondence courses.

#### a. Distinguishing the National Guard from a Reserve Component

Plaintiff correctly concludes that his status as a member of the National Guard does not equate *directly* to being a member of a reserve component. The definitions of Section 101 of Title 37 clearly distinguish National Guard,[3] National Guard of the United States,[4] and Reserve

---

2. Section 206(d) provides "This section does not authorize compensation for work or study performed by a member of a reserve component in connection with correspondence courses of an armed force."

3. The National Guard is defined as the Army National Guard and the Air National Guard. 37 U.S.C. § 101(6). This Court is only concerned with the Army National Guard, which is defined as:

    that part of the organized militia of the several States, Puerto Rico, Guam, the Canal Zone, the Virgin Islands, and the District of Columbia, active and inactive—(A) is a land force; (B) is trained, and has its officers appointed under the sixteenth clause of section 8, article 1, of the Constitution; (C) is organized, armed, and equipped wholly or partly at Federal Expense; and (D) is federally recognized.
    37 U.S.C. § 101(7).

4. The National Guard of the United States, specifically the Army National Guard of the United States, refers to "the reserve component of the

Component.[5] Thus, while the National Guard of the United States is enumerated as a reserve component, the National Guard is not. The National Guard and the National Guard of the United States are not one and the same and, moreover, the National Guard is not a reserve component.

### b. Dual Enlistment

■ Despite the clear demarcation between the National Guard and the National Guard of the United States, the dual enlistment system enacted by Congress makes members of the National Guard members of the National Guard of the United States as well. The 1933 Congressional amendment to the National Defense Act of 1916 created "two overlapping but distinct organizations—the National Guard of the various States and the National Guard of the United States." *Perpich v. United States Dept. of Defense,* 496 U.S. 334, 345, 110 S.Ct. 2418, 110 L.Ed.2d 312 (1990). "All persons who have enlisted in a state National Guard have simultaneously enlisted in the National Guard of the United States." *Id.* "National Guard members serve as members of both a state national guard and of the National Guard of the United States." *Perpich v. United States Dept. of Defense,* 666 F.Supp. 1319, 1323 (D.Minn.1987), *aff'd,* 880 F.2d 11 (8th Cir.1989), *aff'd,* 496 U.S. 334, 110 S.Ct. 2418, 110 L.Ed.2d 312 (1990); *see also* Army Lawyer, 1994 Army Law 35 (1994) ("a member of the National Guard belongs to a state organization ... and a federal organization ....").

Despite this explicit language, there is considerable confusion over the Supreme Court's holding in *Perpich,* as the parties strongly disagree over how the *Perpich* decision should be applied to the facts of this case.

The *Perpich* court held that Congress's interpretation of the Militia Clauses of the United States Constitution[6] led to the creation of a dual enlistment system in which members of the National Guard are also members of the National Guard of the United States. *Perpich,* 496 U.S. at 350, 110 S.Ct. 2418. According to the *Perpich* decision, the Militia Clauses empower Congress to "govern" the militia while it is employed in the service of the United States—regardless of whether that service is active federal service or not. *Id.* Thus, the states' authority to train the militia is subject to the limitation at the end of the Militia Clauses: "according to the discipline prescribed by Congress." *Id.* In recognizing the supremacy of federal power in military affairs, the *Perpich* analysis indicates that Congress has created the dual enlistment system so that members of the National Guard are essentially members of the National Guard of the United States *on-call. Id.*

Defendant points to the overview of *Perpich* as direct support for its contention that Plaintiff was a member of the National Guard of the United States, making him a member of a reserve component ineligible for compensation for correspondence courses. Plaintiff's reliance on *Perpich,* on the other hand, revolves around a specific reference in the decision to where the Supreme Court stated that a member of the state Guard can only wear one hat at a time, whether it be a "civilian hat, a state militia hat, [or] an army hat." *Id.* at 348, 110 S.Ct. 2418. Plaintiff argues that he is a member of the state National Guard when he wears his state hat and is only a member of the National Guard of the United States when he wears his

---

Army all of whose members are members of the Army National Guard." 37 U.S.C. § 101(8).

**5.** According to 37 U.S.C. § 101(24), the term "reserve component" means: (A) the Army National Guard of the United States; (B) the Army Reserve; (C) the Naval Reserve; (D) the Marine Corps Reserve; (E) the Air National Guard of the United States; (F) the Air Force Reserve; (G) the Coast Guard Reserve; or (H) the Reserve Corps of the Public Health Service.

**6.** Clause 15 and 16 of Article I of the Constitution are referred to as "the Militia Clauses"— they read as follows:

The Congress shall have Power ... to provide for calling forth the Militia to execute the Laws of the Union, suppress Insurrections and repel Invasions; to provide for organizing, arming, and disciplining, the Militia, and for governing such Part of them as may be employed in the Service of the United States, reserving to the States respectively, the Appointment of the Officers, and the Authority of training the Militia according to the discipline prescribed by Congress...." U.S. Const., Art. I, § 8, cl. 15, 16.

federal hat—when he is engaged in active federal service.

Plaintiff puts too much weight on this metaphor, as is clear from the context of the opinion as a whole, which has been discussed above. At the outset, it should be noted that *Perpich* does not doubt that members of the state National Guard are members of the National Guard of the United States at all times. In fact, this point is part of the hat metaphor, as the Court notes that members of the State Guard "keep three hats in their closets." *Id.* at 348, 110 S.Ct. 2418. The hat metaphor was used by the Court to focus on the effect on the Militia Clauses of calling the state National Guard into federal service, i.e., that the "training" that occurs while the state National Guard is in federal service is not the "Authority of training" in the second clause that is reserved to the states. In the paragraph after the one in which the hat metaphor appears, the Court states that when the State Guard is called into federal service, "the state affiliation is suspended in favor of an *entirely* federal affiliation during the period of active service" (emphasis added). *Id.* at 349, 110 S.Ct. 2418. The fact that the affiliation is *entirely* federal when the State Guard is called into active service implies that it is partially federal before. Therefore, the hat metaphor is useful only for emphasizing that when the State Guard wears its federal hat (i.e., is called into federal service), it cannot wear its state hat. As the Court was focusing on the exclusivity of federal control over federal service, doubtless, it failed to see how inapposite the metaphor would be in focusing on the state National Guard when it is not in federal service.

Furthermore, the "Authority of training" in the second clause that is reserved to the states is still "according to the discipline prescribed by Congress." It is *federal* legislation that purportedly requires the Plaintiff to take certain correspondence courses, and

if he were to be paid, he would be paid from the *federal* treasury. As *Perpich* pointed out, "[t]he Federal Government provides virtually all of the funding, the material, and the leadership for the State Guard Units." *Id.* at 351, 110 S.Ct. 2418.

Because the Court finds that Plaintiff is dually enlisted in the National Guard and the National Guard of the United States, and because the Army National Guard of the United States is explicitly deemed a reserve component, Plaintiff is a member of a reserve component and is barred from compensation for correspondence courses in which he participated according to § 206(d). This holding disposes of the case. Nevertheless, for completeness, the Court will consider all the issues presented.

3. Compensation Pursuant to
37 U.S.C. § 206(a)(2) [7]

a. Interpretation of the Statute

Plaintiff's request for compensation centers on § 206(a)(2), which authorizes compensation for National Guard members performing "equivalent training . . . as the Secretary may provide." Despite the parties' disagreement over the degree of discretion afforded the Secretary under the statute, Federal Circuit precedent has explicitly held that § 206(a)(2) is a money-mandating provision. *Dehne*, 970 F.2d at 893 ("[S]ection 206 mandates pay for regular periods of instruction, periods of appropriate duty, and for performance of other equivalent duties."). Thus, once equivalent training has been authorized, the Secretary *must* compensate the National Guard member who has undergone the training.

Defendant spends a great deal of time making the assertion that the use of the word 'may' in § 206(b)(1) converts the statute to non-money mandating. Section 206(b)(1) provides in pertinent part:

7. Section 206 provides in pertinent part:
(a) Under regulations prescribed by the Secretary concerned, and to the extent provided for by appropriations, a member of the National Guard or a member of a reserve component of a uniformed service who is not entitled to basic pay under section 204 of this title, is entitled to compensation, at the rate of ⅓₀ of the basic pay

authorized for a member of a uniformed service of a corresponding grade entitled to basic pay—
(2) for the performance of such other equivalent training, instruction, duty, or appropriate duties, as the Secretary may prescribe. . . .
37 U.S.C. § 206 (emphasis added).

(b) The regulations prescribed under subsection (a) for each uniformed service, the National Guard, and each of the classes of organization of the reserve components within each uniformed service, may be different. The Secretary concerned shall, for the National Guard and each of the classes of organization within each uniformed service, prescribe—

(1) minimum standards that must be met before an assembly for drill or other equivalent period of training, instruction, duty, or appropriate duties may be credited for pay purposes, . . . .

■ While the use of discretionary language does sometimes make a task discretionary,[8] the phrase at issue here refers to the minimum standards that are a prerequisite to *required* compensation. In other words, section (b)(1) simply says that no one is permitted to receive credit for pay purposes for "an assembly for drill or other equivalent period of training, instruction, duty, or appropriate duties," unless the Secretary has prescribed minimum standards. Moreover, the Court recognizes that a statute using discretionary language can be money-mandating as long as the statute states a sum certain and enumerates specific statutory conditions that must be satisfied before a claimant may be granted relief. *See, e.g., Doe v. United States,* 100 F.3d 1576, 1579–82 (Fed.Cir.1996); *Hoch v. United States,* 33 Fed.Cl. 39, 43 (1995). Section 206 specifically states a sum certain ("at the rate of 1/30 of basic pay") and enumerates specific conditions that must be satisfied before payment can be made. The Secretary must prescribe certain duties under § 206(a)(2) and claimant must have performed those duties.

Thus, it is clear from the structure of sections (a) and (b) that a member *must* be paid (under (a)); if the Secretary *elects* to prescribe the performance of equivalent training, instruction, duty, or appropriate duties (under (a)(2)); and if the Secretary *elects* to prescribe the performance of equivalent training, instruction, duty, or appropriate duties (under (a)(2)), he or she *must* prescribe minimum standards (under (b)(1)).

b. Plaintiff's Insufficient Allegations

While Plaintiff's complaint requests compensation for correspondence classes that he did take and those that he has not taken,[9] the Court concentrates solely on those courses undertaken by Plaintiff, as he is not entitled to compensation for those in which he failed to participate or those in which he has yet to participate.[10] *Dehne,* 970 F.2d at 894 (Section 206 does not mandate pay for service never actually performed). Plaintiff's complaint fails to allege that the correspondence courses he took were required by the Secretary. While Plaintiff states that Defendant required Plaintiff as well as other National Guard members to take correspondence courses to keep their jobs and advance in grade, Compl. ¶ 35, Plaintiff's complaint never alleges that the Secretary prescribed those *particular* correspondence courses that Plaintiff actually took. At oral argument and in his Supplemental Memorandum, Plaintiff claims that regulations requiring the completion of certain correspondence courses as a condition of remaining or advancing in grade qualify as courses *prescribed* by the Secretary. As proof, Plaintiff points to Department of the Army Pamphlet (DA PAM) 350–59. While this pamphlet lists a catalog of army correspondence courses, it fails to detail those that Plaintiff was required to take. Merely because certain courses were necessary for Plaintiff to remain or advance in grade does not mean that those courses were ordered by the Secretary.[11]

---

**8.** "When, within the same statute, Congress uses both 'shall' and 'may,' it is differentiating between mandatory and discretionary tasks." *Huston v. United States,* 956 F.2d 259, 262 (Fed.Cir. 1992).

**9.** Plaintiff states that he never took the Basic Non–Commissioned Officer Course (BNCOC) Phase II, which was only offered as a correspondence course, because "he could not dedicate the hours needed to take the course without pay." Compl. ¶ 12.

**10.** At oral argument, Plaintiff's counsel admitted that Plaintiff is only entitled to compensation for correspondence courses that he did take. Tr. 74:9–24.

**11.** Plaintiff does state in his supplemental memorandum that he took subcourse MU1300 and MU1709, which he alleges were prescribed in Phase II BNOCC. If the Court were not granting Defendant's motion based on § 206(d), Plaintiff would be entitled to amend his complaint to include these courses as prescribed by the Secre-

Because Plaintiff does not indicate in his complaint that classes he did indeed take were in fact prescribed by the Secretary, he cannot be compensated for such classes. Thus, despite broadly construing Plaintiff's claims, the Court concludes that Plaintiff has failed to properly allege that he is entitled to compensation for classes that he took.

### 4. "Inactive–Duty Training" as a Bar to Compensation

While Defendant's argument for dismissal regarding § 206(d) is correct, Defendant nevertheless erroneously claims that the definition of "inactive-duty training"[12] under § 101(22) precludes compensation for correspondence courses. The "inactive-duty training" limitation applies only to physical disability payments because it is found only in § 206(a)(3). While the term "inactive-duty training" is also in the title, its existence is not a limitation on all of § 206. When § 206 was originally enacted as a part of Section 501 of the Career Compensation Act of 1949, the title of the statute was "Training Duty With or Without Pay of Reserve and National Guard Personnel." 63 Stat. at 825. The term "inactive-duty training" was not included in the Section 501 title. It did, however, appear in the title of § 206 when Congress enacted § 206 into positive law as part of Title 37 in 1962. In enacting § 206, Congress explicitly stated that the "bill is not intended to make any substantive changes into existing law, but to codify and revise existing law in one place." S.Rep. No. 87–1874 (1962), *reprinted in* 1962 U.S.C.C.A.N. 2390, 2391. Further, the Supreme Court has held that the title of a statute and the heading of a section do not limit the plain meaning of a text. *Bhd. of R.R. Trainmen v. Balt. & O.R. Co.*, 331 U.S. 519, 67 S.Ct. 1387, 91 L.Ed. 1646 (1947) (titles and headings are but "tools available for the resolution of a doubt" when there is no plain meaning).

Thus, despite other provisions that preclude Plaintiff from being compensated for correspondence courses, the presence of the phrase "inactive-duty training" in the title and body of 37 U.S.C. § 206 is not an impediment to Plaintiff in his action seeking compensation.

### IV. Conclusion

In accordance with 37 U.S.C. § 206(d), Plaintiff is barred from compensation for correspondence courses because, as a member of the National Guard of the United States, Plaintiff is a member of a reserve component. Even if Plaintiff were eligible for compensation, however, Plaintiff has failed to demonstrate in his complaint that he has performed equivalent training or duties required by the Secretary under § 206(a)(2). Thus, it is hereby ORDERED that Defendant's Motion to Dismiss is·GRANTED. The Clerk is directed to dismiss the complaint with prejudice because Plaintiff fails to state a claim upon which relief can be granted.

---

tary and completed by Plaintiff. Nevertheless, Plaintiff's complaint failed to enumerate such courses.

**12.** Section 206 provides in pertinent part:
  (3) for a regular period of instruction that the member is scheduled to perform but is unable to perform because of physical disability resulting from an injury, illness, or disease incurred or aggravated—

(A) in line of duty while performing—
(i) active duty; or
(ii) inactive-duty training;
(B) while traveling directly to or from that duty or training (unless such injury, illness, disease, or aggravation of an injury, illness, or disease is the result of the gross negligence or misconduct of the member)....
37 U.S.C. § 206 (emphasis added).