**William a. CLARK, Plaintiff–Appellant,**

v.

**UNITED STATES, Defendant–Appellee.**

No. 02–5062.

United States Court of Appeals, Federal Circuit.

March 18, 2003.

Charles J. Cooper, Cooper & Kirk, P.L.L.C., of Washington, DC, argued for plaintiff-appellant. With him on the brief was Hamish P.M. Hume. Also on the brief were Helen K. Michael and Robert Shulman, Howrey Simon Arnold & White, L.L.P., of Washington, DC; and Richard T. Dorman, Cunningham, Bounds, Yance, Crowder & Brown, LLC, of Mobile, Alabama. Of counsel was Victor J. Miller, Howrey Simon Arnold & White, L.L.P.

John S. Groat, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were Robert D. McCallum, Jr., Assistant Attorney General; David M. Cohen, Director; and James M. Kinsella, Deputy Director. Of counsel on the brief were Captain Andrew M. Leblanc, Department of the Air Force, and Major Joe Fetterman, Department of the Army. Of counsel were Captain Steven D. Bryant, Army Legal Services Agency, of Arlington, Virginia; Major Scott Reid, Department of the Army; and Joseph C. Wendlberger, Department of the Air Force.

Before RADER, SCHALL, and LINN, Circuit Judges.

SCHALL, Circuit Judge.

William A. Clark is a member of the Alabama National Guard. On November 1, 2000, he filed suit in the United States Court of Federal Claims seeking compensation, pursuant to 37 U.S.C. § 206(a) (1994), for his time spent completing mandatory correspondence courses as a member of the National Guard. In due course, the government moved to dismiss Mr. Clark's complaint for lack of jurisdiction or, in the alternative, for failure to state a claim upon which relief could be granted. Ruling on the government's motion, the Court of Federal Claims held that it had jurisdiction in the case under the Tucker

Act, but that 37 U.S.C. § 206(d) barred Mr. Clark's claim. The court therefore dismissed the complaint pursuant to Court of Federal Claims Rule 12(b)(4) for failure to state a claim upon which relief could be granted. *Clark v. United States,* 50 Fed. Cl. 727, 734 (2001). Mr. Clark now appeals the court's decision. We hold that the court properly exercised jurisdiction. We also hold, however, that the court erred in its ruling that section 206(d) bars Mr. Clark's claim. Accordingly, we reverse the court's decision and remand the case for further proceedings, in which Mr. Clark will have the opportunity to establish the amount of compensation, if any, to which he is entitled under 37 U.S.C. § 206(a).

## BACKGROUND

### I. Factual Background

Mr. Clark has been a member of the Alabama National Guard since 1987. The Alabama National Guard is a state militia that employs part-time citizen-soldiers from the State of Alabama. These soldiers respond to calls to service by the Governor of Alabama and must remain prepared to serve at all times. Mr. Clark also is a member of the National Guard of the United States. That is because Alabama National Guard members, like National Guard members from every state and the District of Columbia, are also required to enlist as members of the National Guard of the United States. 10 U.S.C. § 12107(b)(1) ("Under regulations to be prescribed by the Secretary of the Army, a person who enlists in the Army National Guard, or whose term of enlistment in the Army National Guard is extended, shall be concurrently enlisted, or his term of enlistment shall be concurrently extended, as the case may be, as a Reserve of the Army for service in the Army National Guard of the United States."). The National Guard of the United States is a reserve compo-

nent of the uniformed services that may, under the first Militia Clause of the Constitution, be called into federal service by Congress in order "to execute the Laws of the Union, suppress Insurrections and repel Invasions." U.S. Const. art. I, § 8, cl. 15. At all times pertinent to this case, Mr. Clark was serving solely as a member of the Alabama National Guard. The second Militia Clause of the Constitution authorizes Congress to organize, arm, and discipline the Militia. U.S. Const. art. I, § 8, cl. 16. Additionally, it allows Congress to govern the portion of the military that is employed in service to the United States. *Id.* Finally, it reserves to the states the ability to appoint and train the Militia, but requires that the states do so in accordance with the discipline prescribed by Congress. *Id.*

Mr. Clark asserts that, in his capacity as a member of the Alabama National Guard, he was required to take several correspondence courses in order to maintain his status in the Guard or to advance in rank. He further asserts that he took required correspondence courses for which he received no compensation from the government. Mr. Clark claims that these courses were not offered as resident courses, for which active duty pay is generally available, but were only offered as correspondence courses. He further claims that the required courses were "equivalent training" prescribed by the Secretary of the Army, entitling him to compensation under 37 U.S.C. § 206(a)(2). Mr. Clark alleges that he could not dedicate the hours required to continue taking the courses without pay and that he was demoted in rank after he failed to take BNCOC PhII, a required correspondence course.

### II. Procedural History

As noted above, Mr. Clark filed suit in the Court of Federal Claims seeking com-

pensation pursuant to 37 U.S.C. § 206(a) for his completed compulsory correspondence courses and seeking an injunction prohibiting the government from withholding pay for mandatory correspondence courses completed in the future by National Guard members.[1] Section 206(a) provides that "a member of the National Guard or a member of a reserve component of a uniformed service who is not entitled to basic pay ... is entitled to compensation ... for each regular period of instruction" or "other equivalent training...." 37 U.S.C. § 206(a).

The government moved to dismiss Mr. Clark's complaint for lack of jurisdiction or, in the alternative, for failure to state a claim upon which relief could be granted. Rejecting the government's jurisdictional argument, the court concluded that it had jurisdiction under the Tucker Act. Since Mr. Clark had presented a colorable claim under section 206(a), which this court has held to be a money-mandating statute, the court concluded that it had jurisdiction over the case. *Clark*, 50 Fed. Cl. at 729. Turning to the merits, however, the court proceeded to dismiss Mr. Clark's claim on the government's alternate ground, failure to state a claim upon which relief could be granted. *Id.* at 732. The court concluded that because Mr. Clark was "a member of a reserve component," he was barred from receiving compensation for time spent taking required correspondence courses by 37 U.S.C. § 206(d). *Id.* That statute provides that section 206 "does not authorize compensation for work or study performed by a member of a reserve component in connection with correspondence courses of an armed force." 37 U.S.C. § 206(d).

On appeal, Mr. Clark contends that the Court of Federal Claims erred in construing 37 U.S.C. § 206 to defeat his claim. He argues that section 206(a) requires compensation for the mandatory correspondence courses he took as a member of the Alabama National Guard and that section 206(d) does not bar such compensation. The government responds that Mr. Clark is a "member of a reserve component" due to his enlistment in the National Guard of the United States and that section 206(d) prohibits payment of compensation to him for correspondence courses. In addition to responding to Mr. Clark's appeal on the merits, the government renews its assertion that the Court of Federal Claims lacked jurisdiction. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

## ANALYSIS

### I. Jurisdiction

 Whether the Court of Federal Claims properly exercised jurisdiction over a case is a question of law that we review *de novo*. *Wheeler v. United States*, 11 F.3d 156, 158 (Fed.Cir.1993). In this case, the court exercised jurisdiction under the Tucker Act, 28 U.S.C. § 1491, which states in pertinent part as follows:

(1) The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for

---

**1.** The parties agree that section 603 of the National Defense Authorization Act for Fiscal Year 2002 mooted Mr. Clark's prayer for a prospective injunction prohibiting the government from refusing to pay for future mandatory correspondence courses taken by National Guard members. Pub.L. No. 107–107, 115 Stat. 1093, 1133 (2001). Section 603, codified at 37 U.S.C. § 206(d)(2), converts the mandatory compensation scheme into a discretionary one.

liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a) (2000).

Jurisdiction in the Court of Federal Claims is proper under the Tucker Act if a "federal statute 'can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.'" *United States v. Testan,* 424 U.S. 392, 400, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976) (quoting *Eastport S.S. Corp. v. United States,* 178 Ct.Cl. 599, 372 F.2d 1002, 1009 (Ct.Cl.1967)). However, the Tucker Act is merely a jurisdictional statute that allows a plaintiff to bring a substantive claim against the United States. *Id.* at 398, 96 S.Ct. 948. A plaintiff must still prove a substantive right that results in monetary recovery based upon the Constitution, a federal statute, or a regulation. *Id.* In this case, Mr. Clark alleges a substantive right under 37 U.S.C. § 206(a), so our inquiry must focus on whether section 206(a) is money-mandating.

The jurisdictional issue in this case is controlled by *Dehne v. United States,* 970 F.2d 890 (Fed.Cir.1992). In *Dehne,* we held that section 206(a) "mandates pay for regular periods of instruction, periods of appropriate duty, and for performance of other equivalent duties." *Id.* at 893. The government's answer to *Dehne* is that, in this case, section 206(d) applies to Mr. Clark's claim, and section 206(d) on its face is not money-mandating. Since *Dehne* dealt with section 206(a), the government urges, it does not apply to Mr. Clark's case.

We are not persuaded by the government's argument. The problem with the argument is that it confuses the issue of jurisdiction with the question of whether Mr. Clark can prevail on the merits or whether section 206(d) bars his claim. Federal jurisdiction is generally determined at the outset of a case. *Albert v. Kevex Corp.,* 729 F.2d 757, 765 (Fed.Cir.

1984) (referring to "the normal rule that federal jurisdiction is measured at the outset of the suit"). In this case, Mr. Clark has asserted a non-frivolous claim under 37 U.S.C. § 206(a) for compensation for mandatory correspondence courses that he took as a member of the Alabama National Guard. Under *Dehne,* the Court of Federal Claims had jurisdiction to determine whether Mr. Clark presented a claim upon which relief could be granted under section 206(a). The court did not err in exercising jurisdiction over Mr. Clark's claim. *Ralston Steel Corp. v. United States,* 169 Ct. Cl. 119, 340 F.2d 663, 667 (1965) ("In general, a claimant who says that he is entitled to money from the United States because a statute or a regulation grants him that right, in terms or by implication, can properly come to the Court of Claims, at least if his claim is not frivolous but arguable."). We now turn to the merits.

## II. 37 U.S.C. § 206

We review without deference whether the Court of Federal Claims properly dismissed an action for failure to state a claim upon which relief could be granted. *Mitchell Arms, Inc. v. United States,* 7 F.3d 212, 215 (Fed.Cir.1993). A motion to dismiss for failure to state a claim upon which relief can be granted under Court of Federal Claims Rule 12(b)(4) is "appropriate when the facts asserted by the claimant do not entitle him to a legal remedy. In reviewing the dismissal, the court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in the claimant's favor." *Lindsay v. United States,* 295 F.3d 1252, 1257 (Fed.Cir.2002). We also review without deference the Court of Federal Claims' construction of the relevant statutory provisions because it presents an issue of law. *O'Connor v. United States,* 308 F.3d 1233, 1239 (Fed. Cir.2002).

On appeal, Mr. Clark contends that he is entitled to compensation under 37 U.S.C. § 206(a) for mandatory correspondence courses that he took as a member of the Alabama National Guard. He further contends that his dual enlistment in the National Guard and the National Guard of the United States does not preclude him from receiving compensation under section 206(d), because when he took the courses, he was a member in service of the Alabama National Guard and he was not in federal service.

The government argues that Mr. Clark's enlistment in the National Guard of the United States makes him "a member of a reserve component" for the purposes of 37 U.S.C. § 206(d) and that, therefore, he is excluded from receiving compensation for any correspondence courses. The government contends that it is immaterial that Mr. Clark took the correspondence courses in his role as a member of the Alabama National Guard. That is so, the government maintains, because section 206(d) focuses on a National Guard member's status as a member of a reserve component rather than on the function the member is performing at the time of the training. Additionally, the government asserts that the Secretary of the Army must prescribe payment and equivalent training before a National Guard member becomes eligible for compensation. In this case, the government argues, the Secretary of the Army never prescribed compensation for correspondence courses and never prescribed correspondence courses as equivalent training.

■■ We begin with the language of the statute. *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 756, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975) (The "starting point in every case involving construction of a statute is the language itself."). "And where the statutory language provides a clear answer, it ends there as well."

*Hughes Aircraft Co. v. Jacobson,* 525 U.S. 432, 438, 119 S.Ct. 755, 142 L.Ed.2d 881 (1999). The statute at issue in this case, 37 U.S.C. § 206, states in relevant part as follows:

§ 206. Reserves; members of National Guard; inactive-duty training

(a) Under regulations prescribed by the Secretary concerned, and to the extent provided for by appropriations, a member of the National Guard or a member of a reserve component of a uniformed service who is not entitled to basic pay under section 204 of this title, is entitled to compensation, at the rate of 1/30 of the basic pay authorized for a member of a uniformed service of a corresponding grade entitled to basic pay—

(1) for each regular period of instruction, or period of appropriate duty, at which the member is engaged for at least two hours, including that performed on a Sunday or holiday;

(2) for the performance of such other equivalent training, instruction, duty, or appropriate duties, as the Secretary may prescribe; or ....

(d) This section does not authorize compensation for work or study performed by a member of a reserve component in connection with correspondence courses of an armed force.

37 U.S.C. § 206(a) & (d) (1994) (emphases added).

Mr. Clark's claim rests on section 206(a), which authorizes compensation to be paid to both "a member of the National Guard" and "a member of a reserve component" for performing functions for which they are not entitled to active duty pay. 37 U.S.C. § 206(a). The government's argument against Mr. Clark's claim rests on section 206(d), which bars compensation for "a member of a reserve component." 37 U.S.C. § 206(d). For the reasons which

follow, we conclude that the Court of Federal Claims erred in holding that section 206(d) operates to bar Mr. Clark's claim for compensation under section 206(a).

 Preliminarily, as a matter of textual construction, the government's reading of the statute requires the phrase "member of a reserve component" to encompass both National Guard members and reserve component members. Such a reading renders the delineation of the two groups in section 206(a) redundant. We "will avoid an interpretation of a statute that renders some words altogether redundant." *United States v. Alaska,* 521 U.S. 1, 59, 117 S.Ct. 1888, 138 L.Ed.2d 231 (1997) (internal quotation marks omitted). The same is true in the case of sections 206(b) and (e), where Congress again chose to refer to both National Guard members and reserve component members. 37 U.S.C. § 206(b) & (e).[2] The language in section 206(a) suggests that Congress intended to treat members of the state National Guard separately from members of a reserve component and that Congress did not intend section 206(d) to apply to members of the state National Guard.

A closer look at the meaning of the phrase "a member of a reserve component" in section 206(d) helps decipher whether the phrase includes National Guard members. The government argues that all National Guard members are also members of a reserve component due to their dual enlistment in the National Guard of the United States. Section 101 of Title 37 defines several of the terms used in section 206, including "member,"

"reserve component," and "Army National Guard of the United States." Section 101 defines "member" as "a person appointed or enlisted in, or conscripted into, a uniformed service," and defines "reserve component" as "(A) the Army National Guard of the United States; (B) the Army Reserve; . . . ." 37 U.S.C. § 101(23) & (24). Additionally, section 101 defines "Army National Guard of the United States" as "the reserve component of the Army all of whose members are members of the Army National Guard." 37 U.S.C. § 101(8). Under the definitions in section 101 and by reason of Mr. Clark's dual enlistment pursuant to 10 U.S.C. § 12107(b)(1), he is a member of the Alabama National Guard and a member of the Army National Guard of the United States, which is a reserve component of the Army.

Our inquiry does not end there, however. Although the National Guard of the United States is a reserve component, the Alabama National Guard, of which Mr. Clark is also a member, is not a reserve component of a uniformed service. It becomes clear, when we consider Supreme Court precedent and the statutory scheme of which section 206 is a part, that the National Guard and the National Guard of the United States are separate and distinct entities. To include a member of the Alabama National Guard in the section 206(d) exclusion would not only make Congress' delineation in section 206(a) of who is entitled to compensation superfluous, but would result in a state National Guard member bring treated like a federal member of a reserve component.

---

**2.** Subsection (b) states that the "regulations prescribed under subsection (a) for each uniformed service, the National Guard, and each of the classes of organization of the reserve components within each uniformed service, may be different." 37 U.S.C. § 206(b). Subsection (e) states that a "member of the National Guard or of a reserve component of the uniformed services may not be paid under this section for more than four periods of equivalent training, instruction, duty, or appropriate duties performed during a fiscal year instead of the member's regular period of instruction or regular period of appropriate duty during that fiscal year." 37 U.S.C. § 206(e).

To determine whether a member of the National Guard should be covered by section 206(d), we look to *Perpich v. Department of Defense*, 496 U.S. 334, 110 S.Ct. 2418, 110 L.Ed.2d 312 (1990). In *Perpich*, the governor of Minnesota challenged the constitutionality of the Montgomery Amendment, enacted as section 522 of the National Defense Authorization Act for Fiscal Year 1987, Pub.L. No. 99–661, 100 Stat. 3871. The Montgomery Amendment precluded a state governor from withholding consent to active duty outside the United States by National Guard members. *Perpich*, 496 U.S. at 336, 110 S.Ct. 2418. The Court rejected the challenge. It held that when members of the Minnesota National Guard were called into federal duty, they lost their state militia status, and the second Militia Clause in the Constitution was no longer applicable. *Id.* at 319, 110 S.Ct. 2418. With this in mind, the Supreme Court · discussed the dual scheme of the state and federal National Guard systems and the compromise that lead to this hybrid body. The Court stated:

> Since 1933 all persons who have enlisted in a state National Guard unit have simultaneously enlisted in the National Guard of the United States. In the latter capacity they became a part of the Enlisted Reserve Corps of the Army, but unless and until ordered to active duty in the Army, they retain their status as members of a separate state Guard unit.

*Id.* at 345, 110 S.Ct. 2418. The Court further stated:

> [T]he members of the National Guard of Minnesota who are ordered into federal service with the National Guard of the United States lose their status as members of the State militia during their period of active duty. If that duty is a training mission, the training is performed by the Army in which the trainee is serving, not by the militia

from which the member has been temporarily disassociated.

*Id.* at 347, 110 S.Ct. 2418.

We understand *Perpich* to stand for the proposition that members of the National Guard only serve the federal military when they are formally called into the military service of the United States. At all other times, National Guard members serve solely as members of the State militia under the command of a state governor. This concept is best described by the "hat" analogy presented in *Perpich*, where the Supreme Court stated:

> [A]ll of [the National Guard members] now must keep three hats in their closets—a civilian hat, a state militia hat, and an army hat—only one of which is worn at any particular time. When the state militia hat is being worn, the "drilling and other exercises" ... are performed pursuant to "the Authority of training Militia according to the discipline prescribed by Congress," but when that hat is replaced by the federal hat, the Militia Clause is no longer applicable.

*Id.* Moreover, the Court added, "the state affiliation is suspended in favor of an entirely federal affiliation during the period of active duty." *Id.* at 349, 110 S.Ct. 2418. The Supreme Court relied on the separate nature of the Guard members' state and federal functions in concluding that the second Militia Clause does not apply when National Guard members are called into active federal duty.

Courts have consistently relied on the same distinction. For example, in *Gnagy v. United States*, the Court of Claims held that "a member of a National Guard unit not in active federal service is not, insofar as his military capacity with the Guard is concerned, a federal employee for the purposes of the Back Pay Act." 225 Ct.Cl. 242, 634 F.2d 574, 579 (1980). In *Gilliam v.*

*Miller*, the Ninth Circuit held that the Administrative Procedure Act does not apply to the administration of rules relating to National Guard members when they are not in federal service. 973 F.2d 760, 764 (9th Cir.1992). Finally, in *Gillett v. Dern*, the District of Columbia Circuit stated that "except when employed in the service of the United States, officers of the National Guard continue to be officers of the state and not officers of the United States or of the Military Establishment of the United States." 74 F.2d 485, 487 (D.C.Cir. 1934). These cases recognize that the status of a National Guard member, in terms of whether he is in federal service or in state service, affects the extent to which, in a given situation, various requirements of law apply to him. Our decision today is no more than an application of this principle to 37 U.S.C. § 206.

■■■ The Posse Comitatus Act also supports the proposition that membership in a state National Guard and in the National Guard of the United States represent different activities. The Posse Comitatus Act prohibits the use of "any part of the Army or Air Force as a posse comitatus or otherwise to execute the laws...." 18 U.S.C. § 1385. The Act has been uniformly interpreted to apply to National Guard members only when they are in federal service and not when they are in service to their states. *United States v. Hutchings*, 127 F.3d 1255, 1257–58 (10th Cir.1997) ("But until a Guardsman receives orders directing him into federal service, he is a state serviceman, and not a part of the federal Army."); *United States v. Benish*, 5 F.3d 20, 25–26 (3d Cir.1993) (holding that Pennsylvania National Guard members could be used for civilian law enforcement because they were not in federal service at the time). Case law thus establishes that when National Guard members are not activated into federal service, they are not treated as federal employees. To include a National Guard member in a

reserve component for the purposes of section 206(d) when he is in service to the state National Guard would be to treat that member as a federal employee, and not as a state serviceman, and would be contrary to that law.

■■■ In addition, when we construe a statute, we do so in the setting of the statutory scheme of which it is a part. *Tyler v. Cain*, 533 U.S. 656, 662, 121 S.Ct. 2478, 150 L.Ed.2d 632 (2001) (stating that "we interpret the words in their context and with a view to their place in the overall statutory scheme") (internal quotation marks omitted). Several Constitutional and statutory provisions support Mr. Clark's argument that a member of the National Guard serves his state exclusively except when called into federal service. For example, Article I, section 8 of the Constitution "reserve[s] to the States respectively, the Appointment of the Officers, and the Authority of training the Militia according to the discipline prescribed by Congress," except when the Militia is called into federal service. U.S. Const. art. I, § 8, cl. 16.

The statutory schemes comprising the dual enlistment system, Title 32 and Title 10 of the United States Code, are consistent with Article I. Title 32 describes a National Guard member's duties to the state during service, once the member is called into federal service, and again once the member is relieved from federal service. Section 501 of Title 32 states that "[t]he training of the National Guard shall be conducted by the several States and Territories, Puerto Rico, and the District of Columbia in conformity with this title." 32 U.S.C. § 501. At the same time, section 325 of Title 32 provides as follows:

(a) Each member of the Army National Guard of the United States ... who is ordered to active duty is relieved from duty in the National Guard of his State or Territory....

(b) So far as practicable, members ... of the Army National Guard of the United States ... ordered to active duty shall be returned to their National Guard status upon relief from that duty.

32 U.S.C. § 325.

Various provisions of Title 10 further explain the relationship between National Guard members and federal service. "When not on active duty, members of the Army National Guard of the United States shall be administered, armed, equipped, and trained in their status as members of the Army National Guard." 10 U.S.C. § 10107. Meanwhile, section 12401 of Title 10 provides that "[m]embers of the Army National Guard of the United States and the Air National Guard of the United States are not in active Federal service except when ordered thereto under law." 10 U.S.C. § 12401. In short, National Guard members are only serving in the federal military when they are called into formal military service. Moreover, Title 10 explains the status of National Guard members once they are called into federal service. Finally, section 12403 of Title 10 states that "[m]embers of the Army National Guard of the United States ordered to active duty shall be ordered to duty as Reserves of the Army." 10 U.S.C. § 12403. In other words, when ordered into federal service, a member of the National Guard is ordered into a reserve component of the Army where he or she serves as a member of the Army reserves.

The foregoing provisions of the National Guard statutory scheme support Mr. Clark's contention that his functions in the state National Guard and the federal National Guard of the United States are mutually exclusive. At the same time, Mr. Clark's well-pled complaint alleges that he was required to take correspondence courses in order to maintain his status in the National Guard or to advance in rank. His complaint further alleges that he took several required correspondence courses and did not receive compensation for them. It thus is clear that Mr. Clark is seeking compensation for correspondence courses taken while in service to the Alabama National Guard and not the National Guard of the United States. We therefore conclude that 37 U.S.C. § 206(d) does not bar Mr. Clark's claim for compensation and that, as a matter of law, his complaint is sufficient to state a cause of action under 37 U.S.C. § 206(a). On remand, of course, Mr. Clark must establish which classes the Secretary of the Army required, if any, and which classes he took to satisfy those requirements. Moreover, he must establish the amount of compensation he is due under the statute.

■ Alternatively, the government argues that section 206(a) requires the Secretary of the Army to prescribe payment for equivalent training before section 206(a) mandates compensation. The government argues that in this case the Secretary did not prescribe payment for time spent taking the required correspondence courses and that, therefore, Mr. Clark should not be compensated. We do not agree. Section 206(a)(2) requires payment for equivalent training that the Secretary prescribes. It does not require that the Secretary prescribe payment.

■ Neither do we agree with the government's contention that the use of the phrase "inactive-duty training" in the title of section 206 and in section 206(a)(3) supports the proposition that section 206(d) bars compensation for correspondence courses taken by National Guard members.[3] The government contends that

---

**3.** 37 U.S.C. § 206(a)(3) states that a National Guard member or a member of a reserve component of a uniformed service is entitled to compensation "(3) for a regular period of instruction that the member is scheduled to

Congress' reference to inactive-duty training in the title of section 206 suggests, when read in combination with its definition in section 101(22), that Congress intended to bar compensation for correspondence courses for members of a reserve component and for members of the National Guard.[4] We, however, read Congress' use of the phrase "inactive-duty training" in the title of section 206 as a mere reference to section 206(a)(3), which expressly concerns inactive-duty training.

## CONCLUSION

The Court of Federal Claims properly exercised jurisdiction in this case. However, the court erred in holding that, as a matter of law, 37 U.S.C. § 206(d) bars Mr. Clark's claim for compensation under 37 U.S.C. § 206(a) and that, consequently, Mr. Clark has failed to state a claim upon which relief may be granted. Accordingly, the decision of the Court of Federal Claims is reversed. The case is remanded to the court for proceedings on the merits of Mr. Clark's claim for compensation under section 206(a).

REVERSED and REMANDED.

perform but is unable to perform because of physical disability resulting from an injury, illness, or disease incurred or aggravated—(A) in line of duty while performing—(i) active duty; or (ii) inactive-duty training...."

4. 37 U.S.C. § 101(22) states that the definition of the term "inactive-duty training" is "(B) special additional duties authorized for members of a reserve component ... and includes those duties when performed by members of a reserve component in their status as members of the National Guard, but does not include work or study in connection with a correspondence course of a uniformed service."