**Louis DIMANNI, Petitioner,**

v.

**RHODE ISLAND ARMY NATIONAL GUARD, Respondent.**

No. 02–3351.

United States Court of Appeals, Federal Circuit.

DECIDED: April 10, 2003.

Before RADER, Circuit Judge,
PLAGER, Senior Circuit Judge, and
BRYSON, Circuit Judge.

PER CURIAM.

Mr. DiManni appeals the dismissal of his case by the Merit Systems Protection Board (Board) for lack of jurisdiction and for failure to state a claim upon which relief can be granted. *DiManni v. R.I. Army Nat'l Guard,* No. BN3443010092–I–1, 2002 WL 1370667 (M.S.P.B. June 14, 2002). Because the Board does not have jurisdiction to adjudicate Mr. DiManni's claim, the Board's decision is *affirmed.*

## I.

Mr. DiManni held the position of Management Auditor, GS–9–11, in the United States Property Fiscal Office (USPFO), Analysis and Internal Review Division, Providence, Rhode Island. As a National Guard technician, Mr. DiManni received funds and property of the United States for the Rhode Island Army National Guard (RIANG). In particular, Mr. DiManni had the duty of preventing incidents of fraud, waste, and abuse of Government funds by members of the RIANG. From September 1985 to May 1989, auditors in his position were also required to hold membership in the state National Guard. Mr. DiManni satisfied this duality requirement by holding membership in the RIANG, and achieved the rank of Chief Warrant Officer. From September 1985 until January 1989, Mr. DiManni received positive Officer Evaluation Reports and promotions to the next higher grade in step with or in advance of his contemporaries. Mr. DiManni's appraisals for his job as a Management Auditor reflected above-average or excellent performance of his duties.

In March 1989, Mr. DiManni testified before the First Army Inspector General Team, which was investigating evidence of misappropriation of federal Government funds by Assistant Adjutant General Andre Trudeau, RIANG. Although the testimony of most of the witnesses against General Trudeau was confidential, Mr. DiManni's testimony became public because he testified as part of his official duties as an employee of the USPFO. Two months after Mr. DiManni testified against General Trudeau, General Trudeau convened the Rhode Island Guard Annual Selective Retention Board (SRB). General Trudeau assumed the presidency of the SRB, but did not recuse himself from the proceedings when evaluating the record of Mr.

DiManni, despite an apparent conflict of interest. Of the seventy-five commissioned and warrant officers reviewed by this SRB, only Mr. DiManni was not selected for retention. Following his non-retention by the RIANG, Mr. DiManni was involuntarily separated from his position as a Management Auditor for the USPFO. This separation, effective August, 28, 1989, was "due to loss of military membership other than for cause." Mr. DiManni was then deemed eligible for a discontinued service retirement.

Mr. DiManni appealed his separation from his Management Auditor position to the Board, asserting his non-selection was in retaliation for his whistleblowing. Mr. DiManni moved to join the USPFO as an appellee agency. Specifically, Mr. DiManni alleged that the USPFO "failed to reclassify him" in violation of various statutory provisions, as the position of Management Auditor was redescribed on May 25, 1989, as having competitive status. Mr. DiManni argued that this change to competitive status eliminated the concurrent National Guard membership requirement for his position. The administrative judge denied this motion, suggesting that the USPFO is statutorily part of the RIANG under the National Guard Technician's Act. *See* 32 U.S.C. § 708 (2000).

The administrative judge determined in his Initial Decision that the Board lacked jurisdiction to review a National Guard Technician removal action. Relying on the Board's interpretation of the National Guard Technician's Act, the administrative judge determined that the sole remedy for removal from a National Guard Technician's position is an appeal to the Adjutant General of the applicable state National Guard. Furthermore, the administrative judge concluded that, even if the Board had jurisdiction to hear Mr. DiManni's claim, the Board was unable to grant the relief Mr. DiManni sought. The administrative judge reasoned that although Mr. DiManni was a federal employee of the USPFO, as a National Guard Technician, his position was under the authority of a state official, i.e., the Adjutant General of the RIANG. The Board has no authority to enforce an order against state officials, such as the Adjutant General of the RIANG. Therefore, the administrative judge dismissed Mr. DiManni's appeal for lack of jurisdiction.

The Initial Decision of the administrative judge became final on June 14, 2002, when the Board denied Mr. DiManni's petition for review. Mr. DiManni timely appealed to this court, which has exclusive jurisdiction. 28 U.S.C. § 1295(a)(9) (2000).

## II.

Whether the Board has jurisdiction to adjudicate a particular appeal is a question of law reviewed *de novo* by this court. *Herman v. Dep't. of Def.,* 193 F.3d 1375, 1378 (Fed.Cir.1999). This court's ability to review final decisions of the Board is limited by statute. Decisions of the Board will not be set aside unless found to be 1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; 2) obtained without procedures required by law, rule or regulation having been followed; or 3) unsupported by substantial evidence. 5 U.S.C. § 7703(c) (2000); *See Hayes v. Dep't of Navy,* 727 F.2d 1535, 1537 (Fed.Cir.1984).

## III.

█ Regarding the Board's denial of Mr. DiManni's motion to add the USPFO as an appellee, Mr. DiManni argues that he was inappropriately separated from his Technician's position because he was denied retention in the National Guard via an improper evaluation of his service records in retaliation for his whistle-blowing activi-

ties. This court notes that Mr. DiManni properly raises arguments questioning the Board's rationale for denying his motion. In denying the motion the administrative judge states that "the USPFO is part of the RIANG." *DiManni,* No. BN3443010092–I–1 at 4. However, this court finds no legal basis for that conclusion by the administrative judge. 32 U.S.C. § 708 reads in part:

(a) The Governor of each State or Territory and Puerto Rico, and the commanding general of the National Guard of the District of Columbia, shall appoint, designate or detail, subject to the approval of the Secretary of the Army and the Secretary of the Air Force, a qualified commissioned officer of the National Guard of that jurisdiction who is also a commissioned officer of the Army National Guard of the United States or the Air National Guard of the United States, as the case may be, to be the property and fiscal officer of that jurisdiction. If the officer is not on active duty, the President may order him to active duty, with his consent, to serve as a property and fiscal officer.

(c) When he ceases to hold that assignment, a property officer resumes his status as an officer of the National Guard.

(e) The Secretary of the Army and the Secretary of the Air force shall prescribe joint regulations necessary to carry out subsections (a)-(d).

32 U.S.C. § 708 (2002). Thus, this statute provides for a gubernatorial nomination process for property and fiscal officers, enables the President of the United States to order these officers into active duty service, and provides for the Secretaries of the Army and Air Force to prescribe regulations for carrying out the statute. The regulations set forth by the Secretaries under this statute appear in NGR130–6/ANGI 36–2 (December 17, 1999). These regulations prescribe the appointment, mission, duties, responsibilities, and personnel administration of USPFO officers. While the applicable regulations direct governors to nominate candidates, the Chief of the National Guard Bureau decides to accept or reject the nominees. Thus, the appointment is federal, not state in nature. Upon appointment, the Chief of the National Guard Bureau orders appointees into active duty under 10 U.S.C. § 12301(d) (2000).

The regulations also state that "USPFOs are an integral part of the NGB (National Guard Bureau) Staff and in effect are extensions of the NGB Staff into the States." *See* NGR130–6/ANGI 36–2 at 1–3. The regulations expressly state that USPFO personnel are "agents of the Chief, National Guard Bureau," and as active duty officers are "assigned to the National Guard Bureau (NGB) with duty station in the State for which appointed as USPFO." *Id.* These officers wear the National Guard Bureau Branch insignia. *Id.* For Uniform Code of Military Justice purposes, USPFO members of the Army National Guard of the United States are under the jurisdiction of the Commander, Military District of Washington. *Id.*

Taken together, nothing in § 708 or its attendant regulations indicates that the USPFO is a component of the state National Guard, as determined by the administrative judge. To the contrary, the statute and proscribed regulations indicate that USPFO officers are members of the National Guard of the United States, and serve as agents of the National Guard Bureau, not part of the state National Guard with which they work.

■ Because USPFO personnel are also military members on active duty, Mr. DiManni correctly notes that he was under the military command of the Army Nation-

al Guard of the United States while dually employed by the USPFO. Therefore, to the extent that the Board's reasoning suggests Mr. DiManni's chain of command for service performance evaluations resides within the RIANG, this court has held otherwise. *See Clark v. United States,* 322 F.3d 1358, slip op. at 12–14 (Fed.Cir. March, 2003). In *Clark,* this court reiterated the Supreme Court's position that once called to active duty by the Army National Guard of the United States, military personnel are no longer under the control of state National Guard commanders-in-chief, i.e. governors. *Perpich v. Dep't of Def.,* 496 U.S. 334, 110 S.Ct. 2418, 110 L.Ed.2d 312 (1990). As stated in *Perpich,* National Guardsmen wear three hats: as civilians, as members of state National Guard units, and as active duty members of the National Guard of the United States. However, they can only wear one hat at any given time. *Id.* at 347.

Because National Guard members cannot simultaneously wear both state and federal National Guard hats, Mr. DiManni may indeed have a basis for his claim that he was involuntarily separated from his USPFO position due to an inappropriate evaluation of his service record by Adjutant General Trudeau of the RIANG, as opposed to the Vice Chief, National Guard Bureau. However, even though the administrative judge incorrectly understood 32 U.S.C. § 708 as requiring the USPFO to be a subdivision of the RIANG, this does not necessarily mean that the Board could adjudicate this claim by adding the USPFO as a party. It appears that the RIANG (or National Guard of the United States), not the USPFO, is the proper party for such a claim. It is also unclear from the record whether Mr. DiManni presented this argument to the Board before appealing to this court. Regardless, any error associated with the Board's denial of Mr. DiManni's motion to add the USPFO

as a party was harmless, as the Board could not hear Mr. DiManni's appeal for reinstatement to the USPFO, as discussed below.

■ The National Guard Technician's Act, 32 U.S.C. § 709 governs Mr. DiManni's position as a Management Auditor:

Notwithstanding any other provision of law, and under the regulations prescribed by the Secretary concerned . . . a reduction in force, removal, or an adverse action involving discharge from technician employment, suspension, furlough without pay, or reduction in rank or compensation shall be accomplished by the adjutant general of the jurisdiction concerned.

32 U.S.C. § 709(f)(3) (2000). This Act further provides that "a right to appeal which may exist with respect to paragraph (3) shall not exceed beyond the adjutant general of the jurisdiction concerned." 32 U.S.C. § 709(f)(4). This court has interpreted this statutory language to mean that a National Guard Technician, who is a "federal employee for the purposes of fringe and retirement benefits," nevertheless is barred from appealing adverse actions taken under the statute. *Singleton v. Merit Sys. Prot. Bd.,* 244 F.3d 1331, 1334 (Fed.Cir.2001). This statute also precludes Board review of an assertion of prohibited personnel actions under the Whistleblower Protection Act. *See* 5 U.S.C. § 2302(a)(2)(A)(ii) (2000); *Singleton,* 244 F.3d at 1336–37. Thus, Mr. DiManni's request for reinstatement to his USPFO position as a Management Analyst is the type of action § 709(f)(3) expressly reserves to "the adjutant general of the jurisdiction concerned."

As noted in *Singleton,* "[t]he Board is a creature of limited authority," which is statutorily permitted to "order any federal agency or employee to comply with any

order or decision issued by the Board under the authority granted under paragraph (1) of this subsection and enforce compliance with any such order." 5 U.S.C. § 1204(a)(1)(2) (2002); *Singleton* at 1336. The Board cannot enforce an order against a state entity, such as the RIANG.

Accordingly, the Board correctly dismissed Mr. DiManni's appeal for lack of jurisdiction. Therefore, the decision of the Board is affirmed.